[Civ. No. 220.    Second Appellate District.—May 2, 1906.]

## WILLIAM H. BROWN, Respondent, v. YARRAHAM GOLD MINING COMPANY, Appellant.

Mining Claim—Ejectment—Conflict as to Boundary—Discrepancy in Government Surveys—Support of Findings.—In an action of ejectment to recover a mining claim, described as located in section 24 in a specified township and range, against a defendant occupying section 13 adjoining it on the north, where the principal dispute related to the boundary between those sections, and the conflict arose from a discrepancy between the government survey of that township, and the government survey of an adjoining township in the next range, claimed to support the defendant, the field-notes of the government survey of the township in which the claims of plaintiff and defendant were situated must control; and it is sufficient that that survey supports the findings and judgment for the plaintiff.

Id.—Judgment for Damages.—A personal judgment for damages was properly included in the recovery, where there was sufficient evidence to sustain the finding supporting it, and there is no tenable objection to the amount thereof.

APPEAL from an order of the Superior Court of Kern County, denying a new trial.    J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

George J. Leovy, and William Chambers, for Appellant.

C. F. Holland, and Powers & Holland, for Respondent.

SMITH, J.—The suit is brought for the recovery of the mining claim known as the "Bryan Gold Mine," described in the complaint as situate in section 24, T. 29 S., R. 34 E., M. D. B., with damages, etc., and for an injunction. The plaintiff had judgment, and the defendants appeal from an order denying their motion for a new trial.

Section 24 is government land, unappropriated unless by the plaintiff's claim. Section 13 adjoining it on the north has been patented to the Southern Pacific Railroad Company; from which, under a contract of sale, the corporation defend-

ant has derived a possessory title. The principal question in the case is as to the location of the boundary between the two sections named. According to the location claimed by the plaintiff, this line is to the north of the mine; according to the claim of the defendants, it is south of the mine and about half a mile south of the location claimed by the plaintiff. The court adopted the plaintiff's location and found the mine to be in section 24.

The defendants claim that this finding is not supported by the evidence; but we are of the opinion that this contention is without merit. The township in question was surveyed by Carlton in the year 1876. The township next to the east (T. 29 S., R. 35 E.) had been previously surveyed and subdivided by Washburn in the year 1854, and again, presumably to correct errors, in the year 1855. On the line between these two townships no monuments have been found. But in the township in question (T. 29 S., R. 34 E.) monuments have been found at the common corner of sections 14, 15, 22, 23, and at the corner of sections 3, 4, 33, 34; and also at the quarter section corner between sections 3 and 4, and at the southwest corner of the township. These all connect and agree with the location of the northeast corner of section 24, or southeast corner of section 13, as claimed by the plaintiff, and found by the court. The southeast corner of the township, as described in the field-notes of Carlton, being seventeen and thirty one-hundredths chains north of the intersection of Cottonwood creek with the meridian line, also agrees with this location; as is the case also with the corner of sections 3, 4, 9, 10 of T. 30 S., R. 35 E., as shown by Carlton's field-notes. These facts would seem to fix the location of the disputed corner of sections of 13, 24, 19, 18, beyond controversy; and notwithstanding the conflicting facts developed by the defendants, would seem to be sufficient to support the findings.

It is claimed, however, by the appellants that by certain monuments and natural objects described in Washburn's field-notes of T. 29 S., R. 35 E., and now found upon the ground, the true location of the disputed corner and line is indicated to be about half a mile to the south of the corner adopted by the court. But assuming this to be the case (which, however, is not clear), we are of the opinion that the survey of the township in question by Carlton must control, and that the

problem is simply to determine how the lines were run by him, and that according to his survey the location of the disputed line cannot be otherwise than as found by the court. The result is—assuming the subdivisions of the adjoining township, 25 S., R. 35 E., to be as claimed by the appellants— that the surveys of the two townships would not correspond and that along the dividing line there would be two several sets of corners corresponding in the literal description. But this, we understand, is by no means an uncommon occurrence.

Another contention of appellant's counsel is that the line between sections 13 and 24, though described in Carlton's field-notes as running nearly due east from the northwest corner of section 24, is to be construed as running to a point about half a mile south of the intersection of the easterly line with the meridian. But this construction, if otherwise admissible, would be admissible only upon the assumption that the line was not run on the ground by Carlton as described in his field-notes; and this cannot be assumed. Assuming the true location of the southwest corner of section 18 in the adjoining township (R. 35 E.) to be as claimed by the appellants, the only conclusion we could draw would be that Carlton mistook the quarter section corner on the west line of that section for the section corner. But as it is with Carlton's survey of the township in question only that we are concerned, this would be immaterial.

On the whole, the most that can be claimed in favor of the appellants is that the evidence of the location is conflicting; and it follows that the finding of the court cannot be disturbed.

Objection is also made by the appellants to the personal judgment against the defendants for damages to the mine; as to which it is claimed that the finding is not sustained by the evidence. There is, however, sufficient evidence to sustain the finding.

Objection is also made to the personal judgment against Hamman for $300, being one-fourth of the gold extracted from the mine. But this objection, also, we think, is untenable. From the allegations of the complaint and the findings, it appears that possession of the mine was taken by the defendants under a contract of sale made by the plaintiff to the

defendant Hamman of date May 13, 1902, which was abandoned November 18th of the same year. Afterward, on May 19, 1903, the plaintiff in the meantime having re-entered, the defendants forcibly entered and ousted him, and it is found by the court that between August 1, 1902, and the same date of the following year, defendants extracted from the mine gold of the amount and value of $1,200, of which, according to the contract between plaintiff and defendant Hamman, the former was entitled to twenty-five per cent; which is the amount adjudged, $300. There may be a question here as to the liability of the defendant Hamman under the contract for one-fourth of the gold extracted after the resumption of possession by the plaintiff. But upon the facts found, and in the absence of anything appearing to reduce the amount, the plaintiff would be entitled to recover as damages the whole sum of $1,200. And under any rule as to the measure of damages that might be adopted, the amount of damages suffered by the plaintiff upon the facts shown by the evidence could hardly have been less than $300. The appellants, therefore, are not in a position to complain.

The order appealed from is affirmed.

Allen, J., and Gray, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 1, 1906, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 28, 1906.